IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE GOULD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-04225-CV-C-NKL |
| | ) | |
| GARY L. PLUMMER, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**ORDER**

Pending before the Court is Intervenor State Farm Fire & Casualty Company's

("State Farm") Claim for Subrogation [Doc. # 61]. State Farm requests this Court to

determine what portion of Stephanie Gould's settlement with Defendants Gary L.

Plummer ("Plummer") and Transportation Specialist, Ltd., duplicates workers'

compensation benefits that State Farm owes Gould. Because all of Gould's settlement

with Plummer and Transportation Specialists, Ltd., was for loss of consortium, her

settlement is not duplicative of her husband's worker compensation benefits and State

Farm is not entitled to subrogation.

I.      **Overview**

On June 5, 2006, a collision between Jeffrey Gould's vehicle and a truck driven by

Plummer caused Jeffrey Gould to suffer fatal injuries. At the time, Jeffrey Gould was the

1

husband of Plaintiff, Stephanie Gould and Plummer was employed by Transportation Specialist, Ltd..

Stephanie Gould subsequently sued Defendants Plummer and Transportation Specialists, Ltd., for Jeffrey's wrongful death and eventually settled with those defendants for $1.7 million dollars. By the terms of the settlement, the $1.7 million dollars was for loss of consortium. On September 27, 2007, this Court entered an order approving the $1.7 million dollar settlement for the wrongful death of Jeffrey Gould, subject to State Farm's claim for subrogation.

## II.    Hearing

On September 24, 2007, at the hearing on Stephanie Gould's wrongful death claim, she testified about her relationship with her husband and the emotional losses she sustained as a result of his death. She talked about ways in which Jeffrey Gould had provided household services in addition to being a wage earner. The Court also received in evidence the report of Dr. John Ward, the Plaintiff's economic expert who identified the following economic losses that were sustained as a result of Jeffrey Gould's wrongful death:

|  | Past Loss | Future Loss | Total Economic Loss |
|---|---|---|---|
| Value of Mr. Gould's earnings | $34,473 | $901,783 | $936,256 |
| Anticipated personal expenses | ($5,834) | ($149,872) | ($155,706) |
| Value of household work services | $15,898 | $490,005 | $505,902 |

| | | | |
|---|---|---|---|
| Value of other economic family services | $12,301 | $405,257 | $417,558 |
| **Total** | $56,837 | $1,647,174 | $1,704,011 |

Subsequent to the hearing, the Court entered an order finding that the $1.7 million dollar settlement of Stephanie Gould's wrongful death claim was fair and should be approved as to Gould and the Defendants.

The only remaining issue in the case is whether Intervenor State Farm is entitled to a workers' compensation lien against Stephanie Gould's $1.7 million dollar settlement. Although Gould claims that her $1.7 million dollar settlement with Plummer and Transportation Specialists, Ltd., was for loss of consortium, State Farm alleges that at least $250,000 of the settlement was for lost wages. Therefore, State Farm claims subrogation in the amount of $80,492 for workers' compensation payments that had been made as of September 24, 2007, and a credit of $174,508 against future workers' compensation payments to be paid by State Farm.

The parties have submitted exhibits to the Court in support of their respective positions and have agreed to submit the matter on the record before the Court without further hearing. The matter has been extensively briefed by both parties and all parties were present and able to participate in the hearing on September 24, 2007.

III. **Choice of Law**

The order approving settlement left open the question of whether Kansas or Missouri law governed the wrongful death action. Jeffrey Gould resided in Johnson County, Kansas, but was killed in Polk County, Missouri. Although Missouri law

3

governs the settlement agreement, the parties do not dispute that Kansas law applies to State Farm's subrogation action.

## IV.  Discussion

Kansas law provides that an employer[1] is entitled to a lien against any recovery received by an injured worker or a deceased worker's estate, excluding any recovery determined by a court "to be loss of consortium or loss of services to a spouse."  K.S.A. § 4-504(b).  The applicable Kansas statute provides in pertinent part:

> (b) In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery, excluding any recovery, or portion thereof, determined by a court to be loss of consortium or loss of services to a spouse.  The employer shall receive notice of the action, have a right to intervene and may participate in the action.  The district court shall determine the extent of participation of the intervenor, including the apportionment of costs and fees.

K.S.A. § 4-504(b).  Thus, the legislature has expressly provided that damages for loss of consortium or loss of services to a spouse are not subject to subrogation.

State Farm, however, argues that at least $250,000 of Stephanie Gould's $1.7 million dollar settlement is actually for lost wages and not for loss of consortium. Relying on that assumption, State Farm cites a number of cases from Kansas to support its subrogation claim.  As discussed more thoroughly below, those cases are not

---

[1]  Under K.S.A. 44-504(b), the entity which pays workmen's compensation benefits holds the "employer" subrogation interest.  *Duarte v. Debruce Grain, Inc.*, 78 P.3d 428, 435 (Kan. 2003).

4

controlling because they either deal with settlements for injuries which are duplicative of worker's compensation benefits or the settlements did not allocate between loss of consortium and other damages or the settlements were unsupported by the facts.

In *Jerby v. Truck Ins. Exchange*, 138 P.3d 359 (Kan. Ct. App. 2006), the Kansas Court of Appeals recognized the right of an employer to apply its workers' compensation lien to the entire amount of a tort settlement even if the settlement did not cover all the lost wages sustained by the worker. However, that case did not address the issue of lost consortium. In *Varner v. Gulf Ins. Co.*, 859 P.2d 414 (Kan. Ct. App. 1993), also cited by State Farm, the parties did not segregate which items of damages were being satisfied by the settlement. For this reason, the Court of Appeals concluded that the entire settlement was subject to subrogation because there was no indication that a portion of it was for loss of consortium. Likewise, in *Houston v. Kansas Highway Patrol*, 708 P.2d 533 (Kan. 1985), the settlement was in bulk and did not specify what amounts were attributable to what damages. Under those circumstances, the Supreme Court of Kansas held that the entire settlement was subject to subrogation. Finally, State Farm relies on the case of *Richard v. Liberty Mut. Ins. Co.*, 160 P.3d 480 (Kan. Ct. App. 2007). The question in that case was whether an attorney may escape the subrogation rights of a workers' compensation payor by unilaterally declaring that a settlement with a tortfeasor is solely for lost consortium and, therefore, not duplicative of workers' compensation benefits. In *Richard,* the plaintiff's attorney created a second release at his own initiative that stated the settlement was not duplicative of workers' compensation benefits and was in fact for

Case 2:06-cv-04225-NKL   Document 81   Filed 06/19/08   Page 5 of 11

future medical costs. He later acknowledged that "his intent behind adding the non-duplicative language [in the second release] was to prevent Liberty Mutual's lien from attaching to Traveler's settlement . . . ." *Id.* Indeed, the plaintiff Richard testified that he didn't know why this language was included because he did not expect to have any future medical expenses. After reviewing the evidence, including the second release which seemed to have no purpose except to avoid subrogation, the Kansas court concluded that Richard's attorney had no basis to claim that the settlement was exempt from subrogation.

Similarly, in *Ryder Integrated Logistics, Inc. v. Royse*, 125 F. Supp.2d 375 (E.D. Mo.2000), a federal court interpreting Missouri law concluded that "a 'unilateral declaration by [a] claimant's attorney' stating that a loss of consortium claim was allocated as part of an overall settlement of a third party claim is insufficient to insulate that claim from a subrogation action." *Id.* at 382, citing *Pendleton v. Workmen's Compensation Appeal Bd.*, 625 A.2d 187, 189 (Pa. Cmwlth. 1993). As in *Varner*, *Houston* and *Ryder*, the court went on to find that the entire settlement was subject to subrogation because the settlement had not distinguished between loss of consortium claims and loss of wages claims.[2]

---

[2] The Court, sua sponte, raised the case of Cogmon v. Cannon, 151 P.3d 45 (Table) (Kan. Ct. App. 2007), 2007 WL 438761. In that case, the Kansas Court of Appeals found that where a plaintiff enters into a settlement of all claims with a third party tortfeasor and releases the tortfeasor "then the recovery is duplicative as a matter of law and the Employer's lien . . . applies to the settlement proceeds, regardless whether plaintiff has been fully compensated for the loss caused by the tortfeasor." Cogmon, 207 WL 438761 at *2, citing Russell v. Mackey, 592 P.2d 902 (1979). The court in Cogmon, however, went on to hold that it was unclear from the record whether the settlement included exempt benefits for loss of consortium and remanded the case for further evidence. Thus, the court tacitly acknowledged that if the release was in part or totally for loss of consortium, the portion of the settlement allocated to loss of consortium

6

Thus, the cases cited by Intervenor State Farm either deal with settlements for lost wages, with settlements where no allocation has been made between lost consortium and lost wages or with settlements that lack evidentiary support for the loss of consortium allocation. In contrast, the settlement now before the Court, expressly states it is for loss of consortium and Kansas law clearly states that such settlements are exempt from worker compensation liens. *See*, K.S.A. § 4-504(b). In *Varner*, quoting *Houston*, the Court said "[i]f an injured worker's settlement with a third-party tortfeasor sets aside specific noncompensable losses and the amount is supportable in fact rather than an effort to circumvent operation of the subrogation statute, the injured worker may be entitled to keep the portion of the settlement attributed to the noncompensable losses." *Varner*, 708 P.2d at 416. Thus, the Kansas courts have made it clear that where a settlement has been segregated between loss of consortium, lost wages and medical expenses, the settlement will be exempt from subrogation if supported by the facts. The controlling question before the Court is whether Gould's $1.7 million dollar settlement is in fact for lost consortium or something else.

State Farm relies on the expert report of Dr. Ward, Plaintiff's expert, to show that Stephanie Gould's settlement with Gary Plummer and Transportation Specialists**,** Ltd., could not be for loss of consortium. That report summarizes the economic losses that were sustained as a result of Jeffrey Gould's death.

———————————

was not subject to subrogation even if there had been a complete release of liability.

7

|  | Past Loss | Future Loss | Total Economic Loss |
|---|---|---|---|
| Value of Mr. Gould's earnings | $34,473 | $901,783 | $936,256 |
| Anticipated personal expenses | ($5,834) | ($149,872) | ($155,706) |
| Value of household work services | $15,898 | $490,005 | $505,902 |
| Value of other economic family services | $12,301 | $405,257 | $417,558 |
| **Total** | $56,837 | $1,647,174 | $1,704,011 |

State Farm argues that the total economic losses suffered by Stephanie Gould are approximately $1.7 million dollars, which according to State Farm is "suspiciously" like the $1.7 million dollar settlement she reached with the Defendants Plummer and Transportation Specialists, Ltd.   From there State Farm concludes that the settlement is duplicative of worker compensation benefits owed by State Farm to Stephanie Gould.

Dr. Ward's calculations were based on a questionnaire completed by Stephanie Gould and applicable government reports relied on by experts to calculate the present value of household and other economic services.  That report shows that Dr. Ward calculated the value of Mr. Gould's lost earnings at $780,550 after a deduction for personal expenses.  However, the total economic losses were for $1,704,011.  Therefore, Mr. Ward's report shows that $1,523,461 are for economic losses based not on wages, but household services provided by Jeffrey Gould.  The Kansas statute makes clear that those economic losses are not subject to subrogation because it refers not only to lost consortium, but also the value of household services.  K.S.A. § 4-504(b) ("excluding any

8

recovery ... determined by a Court to be loss of consortium or loss of services to a spouse.") While Gould's settlement refers to loss of consortium, that phrase is widely understood to cover both loss of relationship and loss of household services. The Court has found no indication that Gould's settlement was only for loss of relationship as opposed to the broader definition of lost consortium.

Furthermore, Dr. Ward's questionnaire and report did not take into account the lost love, companionship and emotional support a wife receives from her husband. Married women are well aware of the priceless value of that relationship; particularly, as one ages and the likelihood of replacing the relationship diminishes. Stephanie Gould's testimony at the hearing on September 24, 2007, poignantly demonstrated the value that she placed on her marriage and the exceptional quality of life she had with her husband. She explained the difficulty that she faced after his death and her need to seek psychological treatment.

Given Stephanie Gould's actual economic losses of $1,523,461 for household services and the quality of her personal relationship with her husband, the Court finds that Gould's $1,700,000 settlement was in fact for loss of consortium as opposed to lost wages or other damages duplicative of the worker compensation benefits paid or due from State Farm.

Having concluded that Stephanie Gould's loss of consortium claim was in fact greater than the $1.7 million dollar settlement, the only question that remains is whether a spouse can choose to settle with the third party tortfeasor for a loss of consortium claim

9

instead of lost wages and still shield the settlement from a workers' compensation subrogation lien. In other words, does a conscious decision to settle for loss of consortium, knowing that will shield the settlement from the workers' compensation lien provided by Kansas statute, cause the settling party to lose the statutory exemption. First, there is nothing in the statute that indicates a spouse cannot elect to settle for loss of consortium instead of lost wages. Second, it must have been known by the legislature that rational decision makers will choose to maximize their rights under the law. It would be expected that settlements will be made for consortium instead of lost wages when such an election is supported by the facts. Therefore, the Court concludes that the Kansas legislature did not intend for a settling plaintiff to forfeit the loss of consortium exemption in K.S.A § 44-504(b) merely because a conscious decision is made to settle for lost consortium rather than lost wages, so long as the settlement is based on fact. As courts have made clear, the intent of K.S.A. § 44-504(b) is to avoid duplicative recovery. In this case, there was no duplicative recovery and Stephanie Gould's settlement with Defendants Plummer and Transportation Specialists, Ltd. is not subject to Intervenor State Farm's subrogation lien.

## V.     Conclusion

For these reasons, judgment is granted in favor of Stephanie Gould on State Farm's claim against her for subrogation.

Accordingly, it is hereby

ORDERED that State Farm's Claim for Subrogation [Doc. # 61] is DENIED.

10

s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: June 19, 2008
Jefferson City, Missouri